**TOWN OF ROME CITY, Appellant (Defendant Below),**

v.

**Mary Louise KING and Kenneth A. King, Appellees (Plaintiffs Below).**

No. 3–882A224.

Court of Appeals of Indiana, Third District.

June 20, 1983.

John F. Lyons, Alan Verplanck, Barrett, Barrett & McNagny, Fort Wayne, Daniel F. Diggins, Emerick & Diggins, Kendallville, for appellant.

David L. King, King & King, Kendallville, for appellees.

HOFFMAN, Presiding Judge.

Appellees Mr. and Mrs. King own two lots located on a peninsula extending northeasterly into Sylvan Lake. Lot 14 used for appellees' residence is located at the foot of the peninsula while Lot 15 of appellees is located at the neck. A road appearing on the plats of public record extends down the neck of the peninsula along the western edge of Lot 15 to appellees' residence. Appellant Rome City constructed a sewage pumping station, placing part of it in the area platted for the road and part on Lots 14 and 15. The operation of the facility has resulted in noise and odor which greatly annoy appellees. Also, on several occasions raw sewage has flowed onto Lot 14. Appellees brought suit for negligence and nuisance against Rome City. The judge entered the following findings after a bench trial:

"FINDINGS OF FACT

1. The plaintiffs are the owners of Lots 14 and 15 in Beck's Penisola Retreat Addition to Sylvan Lake, Rome City, Noble County, Indiana.
2. The Town of Rome City constructed and now maintains certain sewage equipment on and near the real estate of the plaintiffs.
3. A pumping station was placed by the defendant on a platted public roadway leading to Lot 14 of the plaintiffs and the grinder pump controls were placed by defendant on Lot 15 of plaintiffs.
4. On several occasions the pumping station has failed to function resulting in raw sewage flowing over the property of the plaintiffs, which is injurious to the health of the plaintiffs and offensive to their senses.
5. Odors and noises emit from the pumping station interfering with the comfortable enjoyment of plaintiffs' use of their property.
6. There are no safeguards to prevent the pump station from malfunctioning.
7. The plaintiffs have been damaged each time the raw sewage has flowed over plaintiffs' property and will continue to be damaged each time the pumping station fails to work properly.
8. The value of plaintiffs' property is diminished by the location of the pumping station.
9. The pumping station constitutes a nuisance.
10. The question of the taking of plaintiffs' property by the location of the grinder pump on Lot 15 is in litigation and should be decided in that case.

"CONCLUSION

1. That the plaintiffs are entitled to recover damages from the defendant for each time the pump has failed and sewage has spilled onto plaintiffs' property and for the diminution of the value of their property.
2. The pumping station should be moved so as not to interfere with plaintiffs peaceful enjoyment of their property or reimbursed for the loss of value of their property.

IT IS THEREFORE ORDERED AND ADJUDGED that plaintiffs have and recover from the defendant the sum of Six Thousand Dollars ($6,000.00) for the time when sewage has spilled over plaintiffs' property.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant abate and remove the pumping station and locate it at a point so as not to interfere with the use and enjoyment of plaintiffs' property or pay to the plaintiffs the sum of Fifty Thousand Dollars ($50,000.00) for the loss of value of plaintiffs' property.

The defendants have one hundred (100) days within which to relocate the pumping station or pay plaintiffs Fifty Thousand Dollars ($50,000.00)."

Record at 156–158.

On appeal several issues were raised by both parties and have been restated below:

(1) whether appellant failed to comply with Ind.Rules of Procedure, Appellate Rule 8.3(A)(3), (7) regarding certain issues thereby waiving those issues;

(2) whether appellant failed to comply with Ind.Rules of Procedure, Trial Rule 5 thus barring appellant's claim that the trial court's findings were inadequate;

(3) whether the evidence was sufficient and the findings of the trial court adequate to support the requisite elements necessary to recover for a public nuisance;

(4) whether the spillage of raw sewage was caused by an intervening party thus freeing Rome City from liability; and

(5) whether the damages awarded by the trial court were speculative and excessive.

At the outset this Court shall address the procedural issues raised by appellees. First, the appellees contend that appellant failed to specifically set out the applicable section of its motion to correct errors in the argument section of its brief as mandated by Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). The appellees contend this error bars appellant from alleging the spillage of raw sewage was due to the negligence of Northern Indiana Public Service Company.

■ This Court prefers to decide a case on its merits when possible. Where the parties substantially comply with the appellate rules, the Court will reach the merits of the dispute. *Ind. St. Bd. Tx. Comm'rs v. Lyon & Greenleaf* (1977), 172 Ind.App. 272, 359 N.E.2d 931; *Yerkes v. Washington Mfg. Co. et al.* (1975), 163 Ind.App. 692, 326 N.E.2d 629.

It is not necessary that appellants quote the precise language of their motion to correct errors as long as a concise restatement of error is included in the argument section of their briefs. *State, Dept. of Admin., Per. Div. v. Sightes* (1981), Ind.App., 416 N.E.2d 445; *Urbanational Develprs. Inc. et al. v. Shamrock* (1978), 175 Ind.App. 416, 372 N.E.2d 742.

■ Appellant has substantially complied with this rule in view of its memorandum in support of its motion to correct errors which further illuminates the position argued by appellant. A concise statement of the principle argument contained in the specific allegation of error was included in each argument section. *Dept. of Rev. v. Frank Purcell Walnut Lmbr. Co.* (1972), 152 Ind.App. 122, 282 N.E.2d 336. The noncompliance in the instant case is not so substantial as to interfere with a rational consideration of the issues. However, counsel should be advised that a good faith effort to comply with the letter of the rules is preferred, since to do otherwise is to incur risk where it can be avoided.

■ The appellees next contend that appellant is barred from alleging the trial court's findings are inadequate because it failed to raise that error in its motion to correct errors. This contention is not supported by the record. Appellant's assignment of error No. 4 states:

"The special findings of fact required by Indiana Trial Rule 52 are *lacking, incomplete* and do not cover the issue raised by the pleadings or evidence." (Emphasis added.)

Record at 2.

This assignment of error is a challenge to the adequacy of the court's findings couched in different language and satisfies the rule.

The appellees next contend that appellant is barred from alleging the trial court's findings were inadequate for a wholly different reason. This argument is based on the contention that appellant's failure to notify appellees of its proposed findings, pursuant to T.R. 5, renders them invalid. Since appellant's proposed findings are invalid, it cannot complain that the findings entered by the trial court are inadequate.

■ The findings entered by the trial court must serve as an adequate basis for the legal result reached in the judgment. *Sandoval v. Hamersley* (1981), Ind.App., 419 N.E.2d 813; *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749. Thus, just as when the issue of sufficiency of evidence is raised so long as the error is preserved in the motion to correct errors this Court will review the adequacy of special findings entered by the trial court.

■ When reviewing a bench trial where findings of fact and conclusions of law have been requested by the parties and entered by the trial court, this Court will not set aside the findings or judgment unless clearly erroneous. Ind.Rules of Procedure, Trial Rule 52(A);

*Cornett v. Cornett* (1981), Ind.App., 412 N.E.2d 1232. The judgment of the trial court is clearly erroneous when it leaves this Court with the definite and firm conviction that a mistake has been committed, and where the evidence is conflicting, deference shall be given the trial court's decision. *Young v. Bryan* (1977), 178 Ind.App. 702, 368 N.E.2d 1.

■ Where special findings are made by the trial court, they must be sufficient to disclose a valid basis for the legal result reached in the judgment. *Sandoval v. Hamersley, supra; K.B. v. S.B., supra.* The purpose of special findings is to provide the parties and reviewing court with the theory upon which the dispute was resolved. This Court must accept the findings made by the trial court if they are supported by evidence of probative value and may not add to the findings by way of presumption or inference. *Miller, etc. v. Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N.E.2d 17; *Malbin & Bullock, Inc. v. Hilton* (1979), Ind.App., 387 N.E.2d 1332; *In re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171.

At trial and on appeal the Kings assert three grounds as support for the court's ruling that appellant's construction and operation of the sewage pumping station creates a nuisance. First, they argue that the machinery is placed in a manner which blocks a platted public road constituting a nuisance per se. Next, they allege that the noise and odor emanating from the pumping station constitutes a nuisance. They also contend the spillage of raw sewage on their land numerous times each year constitutes a nuisance. The findings of fact entered by the trial court indicate the judge considered all three of these arguments, and the conclusions of law and judgment are so broad as to be applicable to all three types of behavior.

■ When a private person attempts to recover damages from a municipality for a nuisance maintained by that municipality, there are certain requirements which must be met. The plaintiffs must establish that Rome City was negligent in the construction or operation of the alleged· nuisance. *Rice v. City of Evansville* (1886), 108 Ind. 7, 9 N.E. 139; *Weis v. The City of Madison* (1881), 75 Ind. 241; *City of Richmond v. Test et al.* (1897), 18 Ind.App. 482, 48 N.E. 610. *Stein v. City of Lafayette* (1893), 6 Ind.App. 414, 33 N.E. 912. The courts also differentiate between public and private nuisances, and where the acts constitute a public nuisance, a single individual attempting to recover must show some particularized injury he suffered, different in kind from that suffered by the public. *Waltman v. Rund et al.* (1884), 94 Ind. 225; *Haggart et al. v. Stehlin et al.* (1893), 137 Ind. 43, 35 N.E. 997; *Northern Ind. Pub. S. Co. v. W.J. & M.S. Vesey* (1936), 210 Ind. 338, 200 N.E. 620. Appellant vigorously argues that the Kings have failed to satisfy either of these requirements and that the trial court's findings are inadequate in these two areas.

■ As to the Kings' contention that the City blocked a platted public road, they correctly state the law that such an act is a nuisance per se. *Hall v. Breyfogle* (1904), 162 Ind. 494, 70 N.E. 883; *Fossion v. Landry et al.* (1890), 123 Ind. 136, 24 N.E. 96. However, the blocking of the road must materially interfere with complainants' use of that road in order to be actionable. *Martin v. Marks* (1900), 154 Ind. 549, 57 N.E. 249. In the case at bar the facts indicate that although the pumping station blocked

the road as it was established on the plat, the road had never actually been used at that location. Mr. King testified that a tree was located in the center of the area platted for the road, very near the pumping station, and rather than remove the tree Mr. King drove across a portion of Lot 15 which borders the platted area of the road.[1] Therefore, since the area platted for the road has never been used, Rome City's placement of the pumping station does not actually interfere with the Kings' use of the road and consequently does not constitute an actionable nuisance.

Appellees also based their nuisance action on the theory that the noise and odor emanating from the pumping station constitutes an actionable nuisance. Several persons including neighbors of the Kings and area officials testified regarding the odor and noise caused by the operation of the pumping station. While the testimony is conflicting, the court's finding No. 5 states:

"Odors and noises emit from the pumping station interfering with the comfortable enjoyment of plaintiffs' use of their property."

*Record* at 157.

While this may be true, several of the Kings' neighbors testified that they too noticed the noise and odor from the pumping station. Thus the facts indicate that the noise and odor were suffered by the public in general and caused the Kings no particular injury of a dissimilar kind. Therefore, the noise and odor, while it may annoy the Kings, does not constitute an actionable nuisance.

Finally, we arrive at a discussion of the spillage of raw sewage from the pump-

ing station onto the Kings' property. Appellant seems to treat this as a separate issue which has been fully corrected by the compensatory order entered by the court ignoring the fact that these incidents may also supply a basis for the nuisance action and the abatement order. The court's judgment was couched in broad language:

"IT IS FURTHER ORDERED AND ADJUDGED that the defendant abate and remove the pumping station and locate it at a point so as not to interfere with the use and enjoyment of plaintiffs' property . . .[.]"

*Record* at 158.

This language is amply broad to cover the theory that the actionable nuisance was based on Rome City's spillage of raw sewage rather than the placement of the pumping station or the odor and noise from its operation. This conclusion is more persuasive in light of the applicable standard of review, that the trial court's judgment shall be affirmed if it can be sustained on any theory. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Notter v. Beasley, Sheriff, etc.* (1960), 240 Ind. 631, 166 N.E.2d 643.

The trial court's finding No. 6 states: "There are no safeguards to prevent the pump station from malfunctioning."

*Record* at 157.

The evidence in the record indicates that on at least two occasions the cause of the spillage was a power outage due to storms. Evidence in the record also indicates that Rome City could have located an emergency generator at the pumping station site for a cost of under $20,000 to operate the station during a power outage.[2]

---

1. Plaintiffs' counsel questioning plaintiff Kenneth King during direct examination:

   "Q But since you own Lot 15, you've bent it around a little bit?
   "A Since I own Lot 15, rather than cut that tree down and so forth, I cut across on Lot 15 and came out. I can get a better shoot up to the—in the wintertime . . .[.]
   "Q Okay, . . . but this other supposedly platted roadway, to your knowledge has that ever been open or used?

   "A Nobody that I've ever found that can say that they ever used that roadway."
   *Record* at 277–278.

2. Examination of Mr. Myers, Superintendent of Wastewater Treatment Plant for Rome City, by the court:

   "Q Would it be possible to put a generator at the pump site that would kick on automatically at the time of power outage?
   "A It's possible.
   "Q Would that cost very much money?
   *   *   *   *   *   *   *

■ A straightforward application of the standard elements of a negligence action indicates Rome City's failure to place a generator at the site is a negligent omission. None of the parties contest the fact that Rome City has a duty not to dump raw sewage onto residents' lawns. Rome City clearly breached this duty by allowing raw sewage to spill onto the Kings' yard. This raw sewage damaged the Kings and was proximately caused by a malfunction of the pumping station due to a power outage. Power outages due to storms and accidents are common in the area and a foreseeable incident as was the resultant spillage of raw sewage. Further, the damage could have been avoided by the relatively inexpensive purchase of a generator for the pumping station. Therefore, Rome City's failure to supply the generator constituted negligent construction and operation of the pumping station.

There is no question that the Kings established that they suffered a particularized injury different in kind from that suffered by the public. They alone suffered the burden of cleaning raw sewage from their lawn on numerous occasions. The evidence is sufficient to support this theory, and the findings and conclusions entered by the court adequately set out this basis of recovery.

■ Appellant also contends that the damage caused the Kings resulted from the negligence of NIPSCO an intervening cause freeing Rome City from liability. The evidence indicates that not every malfunction of the pump was due to a loss of electric power. Further, as set out above the loss of electricity was a foreseeable event which could have been prepared for in a manner calculated to avoid injury to the Kings. Since this intervening independent cause could have been reasonably expected, it does not constitute an efficient intervening cause freeing Rome City from liability. *Zahora v. Harnischfeger Corp.* (7th Cir.1968) 404 F.2d 172; *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847.

"A  A generator that size, . . . you're probably talking ten or twenty thousand dollars. . . ."

Appellant's last issue concerns the damage award given the Kings. According to appellant the damage award of $6,000 for the spillage of raw sewage onto their property was speculative and excessive. Rome City also argues that the judgment ordering it to abate the nuisance or pay the Kings $50,000 illustrates a failure by the court to weigh the equities in the case.

■ The award of damages is a matter for the discretion of the trial court and will be upheld so long as supported by the evidence. *Smith v. Glesing* (1969), 145 Ind. App. 11, 248 N.E.2d 366; *Valcan Corp. v. M.T. Sparks, Inc.* (1968), 143 Ind.App. 543, 241 N.E.2d 862. The measure of damages must be flexible enough to fit all circumstances and need not be subject to mathematical certainty. *Indiana Bell Tel. Co., Inc. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178; *Alderman Ford v. Bailey et al.* (1972), 154 Ind.App. 632, 291 N.E.2d 92. An award of damages will be overturned only when it gives the reviewing court the impression that it is manifestly excessive or the product of prejudice, passion, partiality or corruption. *Levin v. Schuckman* (1971), 150 Ind.App. 254, 276 N.E.2d 208; *City of Evansville v. Rinehart* (1968), 142 Ind.App. 164, 233 N.E.2d 495.

■ As to the $6,000 damage award for the spillage of raw sewage on three occasions, the evidence is sufficient. The Kings spent several hundred dollars on weed killer to counteract the fertilizing tendencies of the sewage and approximately $75 for road gravel to cover the dirt road which served as the path for the sewage. The Kings also expended their time and energy to clean up the mess as Rome City never attempted to remove the debris. Further, the Kings deserve compensation for the emotional and physical burden of dealing with the hazards created by the spillage and its inherent damage to the value of their property. Viewed in this light the trial court's award is not excessive.

*Record* at 392.

Regarding the $50,000 award alternative to Rome City's abatement of the nuisance, a different question exists. When the property of a claimant is subject to an ongoing loss permanent in nature, the claimant is entitled to damages equal to the depreciation in the value of the property resulting from the nuisance. *City of Huntington v. Stemen* (1906), 37 Ind.App. 553, 77 N.E. 407. Neither component of the award persuades this Court to conclude that the trial court failed to weigh the equities. Rome City could and should have foreseen these circumstances at the time it constructed the pumping station and could have avoided the harsh results of this lawsuit through a relatively minor expenditure at that time. Rome City's failure to provide for this contingency has cost it in excess of what the preventative measure would have. However, it must be pointed out that should Rome City decide to pay the Kings the $50,000 award rather than abate the nuisance, the Kings should be precluded from recovering the $6,000 for the past spillages of sewage. In effect the $50,000 award amounts to compensation for the diminuition in value of the Kings' property resulting from an occasional spillage of sewage onto the Kings' property. Since this $50,000 adequately compensates the Kings for the diminuition of value of their property to allow them to recover for the separate incidents of spillage of raw sewage would enable them to recover twice for the same act.

For the reasons stated above the judgment of the trial court is affirmed with the modifications set out above.

Affirmed as modified in the above opinion.

STATON, J. concurs.

GARRARD, J. concurs in result.