**DATA PROCESSING SERVICES, INC.,**
Appellant (Defendant Below),

v.

**L.H. SMITH OIL CORPORATION,**
Appellee (Plaintiff Below).

No. 4–485A97.

Court of Appeals of Indiana,
Fourth District.

April 28, 1986.

Bruce M. Pennamped, Forbes, Kias & Pennamped, P.C., Indianapolis, for appellant.

Aaron E. Haith, Indianapolis, for appellee.

CONOVER, Judge.

Defendant-Appellant Data Processing Services, Inc. (DPS), appeals an adverse breach of contract judgment in favor of plaintiff-appellee, L.H. Smith Oil Corporation (Smith).

We affirm.

ISSUES

The issues presented for review, restated, are:

1. Whether Smith's claim was barred for failure to assert it as a compulsory counterclaim in an earlier action?

2. Whether the contract was for 'goods' and subject to the sales provisions of the Uniform Commercial Code [1] or for 'services' and therefore governed by common law principles?

3. If subject to article 2 of the Uniform Commercial Code (UCC), whether DPS was entitled to notice of breach before legal action was taken?

4. Whether Smith's alleged 'judicial admission' waived its claim against DPS and discharged any breach?

5. Whether DPS was excused from performance by Smith's refusal to make payment?

6. Whether evidence was properly admitted?

---

1. IND. CODE 26–1–2 et seq.

7. Whether damages were properly measured?

8. Whether DPS was properly denied recovery?

FACTS

DPS is in the business of custom computer programming. Smith sells petroleum products. The business relationship between these parties occurred between 1979 and 1981. Smith and DPS entered into an oral agreement[2] under which DPS was to develop computer software for Smith's IBM System-32 computer. Later, DPS was engaged to develop and implement a data processing system for Smith's new IBM System-34 computer.[3] DPS was to develop an accounting system to meet Smith's specific needs.

In 1981, after having paid several billings submitted by DPS, Smith refused to pay DPS's billing of $7,166.25. DPS sued Smith in Marion Municipal Court (Municipal Court). DPS there alleged breach of contract and open account. Smith answered, then later filed a petition to amend its answer to assert a counterclaim. This petition was denied. Smith then sued DPS in Marion Superior Court (Superior Court), asserting substantially the same claims as those it would have asserted had the Municipal Court granted its petition to amend. Smith moved the Superior Court to consolidate the cases. DPS then moved to dismiss Smith's complaint. DPS's motion to dismiss was denied and the causes were ordered consolidated.

Following trial before the court without the intervention of a jury, judgment was rendered in Smith's favor. Upon timely motion by DPS the trial court entered findings of fact and conclusions of law. DPS appeals.

Additional facts necessary to resolve the issues presented are discussed below.

DISCUSSION AND DECISION

When findings of fact and conclusions of law are requested by the parties, we will not set aside the judgment premised thereon unless it is clearly erroneous, i.e., unless we are definitely and firmly convinced the trial court reached the wrong conclusion. The findings must disclose a valid basis for the result reached and the evidence must support each specific finding of material fact, with deference given to the court where the evidence is conflicting. *Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 717; *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72, 77. We may not add to the findings by way of presumption or inference. *Town of Rome City, supra.* The findings must disclose a valid legal basis which supports the judgment entered below. *Campins, supra.*

We will not reweigh the evidence nor assess the credibility of witnesses. We will affirm if there is sufficient evidence of probative value as reflected in the court's findings to support the decision. We view the evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the judgment. *Campins, supra.*

Special findings are those which contain all the facts necessary for recovery by the party in whose favor the conclusions of law are found. They should contain a statement of the ultimate facts from which the trial court determined the legal rights of the parties. *Shrum v. Dalton* (1982), Ind. App., 442 N.E.2d 366, 371; *Hunter v. Milhous* (1973), 159 Ind.App. 105, 121, 305 N.E.2d 448, 458. The purpose of special findings is to provide the parties and the reviewing court with a clear illustration of the theory upon which the case was decided, thus facilitating review. *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73, 74; *Morphew v. Morphew* (1981), Ind.App. 419 N.E.2d 770, 773. Findings are adequate if they are sufficient to

2. No statute of frauds issue has been raised or argued.

3. Other business entities were also involved in the problems discussed here. We will not belabor this opinion with their involvement except to the extent necessary to resolve the issues presented.

support a valid legal basis for the result reached by the trial court. *Kimbrell, supra; Sandoval v. Hamersley* (1981), Ind. App., 419 N.E.2d 813, 816. The trial court need not recite the evidence in detail as long as the ultimate facts found are stated in the findings. *Sandoval, supra; cf. Salk v. Weinraub* (1979), 271 Ind. 115, 118, 390 N.E.2d 995, 997–998.

With this standard of review in mind we turn to the issues raised by Smith.

### 1. *Denial of DPS's Motion to Dismiss Smith's Complaint*

■ DPS contends the trial court erred when it denied DPS's motion to dismiss Smith's complaint. DPS argues Smith's claim was a compulsory counterclaim in the Municipal Court action. The Municipal Court denied Smith's motion to amend its answer to assert its counterclaim as untimely. DPS argues failure to dismiss Smith's Superior Court complaint permitted Smith to circumvent the requirement of timely assertion of compulsory counterclaims, thereby doing indirectly what it could not do directly.

Smith contends DPS's motion to dismiss was properly denied because (a) Smith's claim was not mature when it filed its answer in Municipal Court, thus the claim was not a compulsory counterclaim and Smith was not required to plead it; and (b) no judgment had yet been entered in Municipal Court, thus Smith's subsequent Superior Court claim was not barred.

The trial court did not err when it denied DPS's motion to dismiss Smith's Superior Court complaint.

Trial Rule 13(A) provides in part:

(A) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. ...

In *Daube and Cord v. LaPorte County Farm Bureau Co-op* (1983), Ind.App., 454 N.E.2d 891, our Third District discussed the conditions under which Trial Rule 13(A) bars a subsequent claim due to failure to assert it as a compulsory counterclaim in an earlier action. Under T.R. 13(A), *Daube* noted, a claim is barred as an unpled compulsory counterclaim if it was not pleaded timely and

1. it arose out of the same transaction or occurrence which was the subject of the initial claim;

2. it was mature within the time of pleading; and

3. there were no third parties over whom the trial court lacked jurisdiction.

Further, following federal precedent, the Third District asserted a fourth condition. That is, a subsequent claim is not barred unless the earlier claim has been reduced to judgment. *Daube and Cord*, 454 N.E.2d at 893. Our Second District also has decided the subsequent claim is not barred unless the first is reduced to judgment. See, *Crider v. State Exchange Bank of Culver* (1986), Ind.App., 487 N.E.2d 1345, 1349; *Metropolitan Real Estate Corp. v. Frey* (1985), Ind.App., 480 N.E.2d 267, 271.

Here DPS's Municipal Court claim had not been reduced to judgment when Smith filed its Superior Court action. Thus, Smith's claim was not barred. The Superior Court did not err when it denied DPS's motion to dismiss.

### 2. *Application of the Uniform Commercial Code*

The trial court found Smith contracted for the development and the delivery of a "program" by DPS. It determined the program was a specially manufactured good within the meaning of IND.CODE 26–1–2–501(1)(a) and (b).[4] I.C. 26–1–2–501(1)(a) and

---

**4.** I.C. 26–1–2–501 reads in part

Sec. 501. (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to

which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in

(b) defines neither 'goods' nor 'specially manufactured goods.' However, these terms are defined in another section of the UCC. See, I.C. 26–1–2–105(1), *infra.*

DPS contends the court erred when it determined the contract was for a "good", subject to the provisions of Art. 2 of the UCC. DPS asserts it was supplying "services", not "goods." Further, DPS argues there was no evidence of what product it was to supply to Smith.

Defining 'goods', I.C. 26–1–2–105(1) of the UCC reads in part

Sec. 105. (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. ...

Heretofore this court has not been called upon to determine whether a contract to provide computer programming is a contract for the sale and purchase of goods and thus subject to the provisions of article 2 of the UCC, or one for the performance of services, and thus subject to common law principles.

We note in passing the Second District of our court has disagreed with us concerning the proper mode of analysis when we are faced with the question of whether the UCC or the common law applies to contracts for the mixed sale of goods and services.

■ This district bifurcates its analysis of such transactions. *Stephenson v. Frazier* (1980), Ind.App., 399 N.E.2d 794, 797, trans. denied (1981), Ind., 425 N.E.2d 73 (opinion denying transfer discussed the standard of review for T.R. 41(B) motions). That is, cases involving actual goods as defined by I.C. 26–1–2–105 will be analyzed as falling within the purview of Article 2 of the UCC, whereas, cases not falling within that definition will be analyzed in accord-

ance with principles of common law. *Stephenson, supra; Peltz Construction Co. v. Dunham* (1982), Ind.App., 436 N.E.2d 892, 894.

Our Second District has declined to follow this approach. Instead, it determined mixed transactions should be analyzed in terms of the transaction's "dominant thrust", i.e., if the predominant thrust of the transaction is the sale of goods all of the contract should fall within Article 2 of the UCC. If the predominant thrust of the transaction is the sale of services common law principles apply. *Baker v. Compton* (1983), Ind.App., 455 N.E.2d 382, 387. We respectfully disagree with our Second District, believing our approach to be the better one: *Inclusio unius est exclusio alterius.* Article 2 of the UCC applies to goods.

■ In this case, however, whichever mode of analysis is used, the facts found by the trial court do not support a conclusion DPS sold goods to Smith. Thus the transaction does not fall within Article 2 of the UCC. It was error to so conclude.

The transaction here is clear-cut. Unlike many of the cases reported in other jurisdictions, DPS sold no "hardware" to Smith. Instead, DPS was retained to design, develop and implement an electronic data processing system to meet Smith's specific needs, *cf.* findings of fact 6, and 8 through 13. [R. 238]. We intentionally stress the active nature of DPS's role.

The very terminology used by the trial court and the parties here show services, not goods were that for which Smith contracted. DPS was *to act* with specific regard to Smith's need. Smith bargained for DPS's skill in developing a system to meet its specific needs. Although the end result was to be preserved by means of some physical manifestation such as magnetic tape, floppy or hard disks, etc., which would generate the recordkeeping computer functions DPS was to develop, it was

any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a) when the contract is made if it is for the sale of goods already existing and identified;

(b) if the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers; ...

DPS's knowledge, skill, and ability for which Smith bargained. The sale of computer hardware or generally-available standardized software was not here involved. *Cf., RRX Industries, Inc. v. LabCon, Inc.* (9th Cir., 1985), 772 F.2d 543, 546 (in a transaction in which software was apparently a prepackaged product, not specifically developed for the buyer, the sales aspect of the transaction predominated; employee training, repair services, and system upgrading were incidental to the sale of the software package and thus the transaction was a sale of goods); *Chatlos Systems, Inc. v. National Cash Register* (D.N.J., 1979) 479 F.Supp. 738 (transaction involving sale of hardware and software was a sale of goods notwithstanding the incidental service aspects of the transaction); *Triangle Underwriters, Inc. v. Honeywell, Inc.* (2nd Cir.1979), 604 F.2d 737, 742–743 (Triangle purchased hardware, standard programming aids of general application and custom application software specifically designed for individual needs. Predominant factor was sale of goods, services were merely incidental).

The mere means by which DPS's skills and knowledge were to be transmitted to Smith's computers was incidental. *Accord, Liberty Financial Management Corp. v. Beneficial Data Processing Corp.* (1984), Mo.App., 670 S.W.2d 40, 49.

The situation here is more analogous to a client seeking a lawyer's advice or a patient seeking medical treatment for a particular ailment than it is to a customer buying seed corn, soap, or cam shafts. While a tangible end product, such as floppy disks, hard disks, punch cards or magnetic tape used as a storage medium for the program may be involved incidentally in this transaction, it is the skill and knowledge of the programmer which is being purchased in the main, not the devices by which this skill and knowledge is placed into the buyer's computer. The means of transmission is not the essence of the agreement. Thus, the provisions of the UCC, including I.C. 26–1–2–314 (implied warranty of merchant-

ability) and I.C. 26–1–2–315 (implied warranty of fitness for a particular purpose), do not apply.

Although the trial court's conclusion the transaction was for goods to which Article 2 of the UCC applies is clearly erroneous, reversal is not necessary. The findings of fact are sufficient to support the judgment on common law principles.

Those who hold themselves out to the world as possessing skill and qualifications in their respective trades or professions impliedly represent they possess the skill and will exhibit the diligence ordinarily possessed by well informed members of the trade or profession. *See, e.g., Citizens Loan, Fund and Savings Association v. Friedley* (1890), 123 Ind. 143, 23 N.E. 1075 (an attorney impliedly represents he has necessary skill and will exhibit diligence ordinarily possessed and exercised by well informed attorneys); *cf., Kirk v. Ridgway* (1985), Iowa, 373 N.W.2d 491 (implied warranty in construction contract that building will be erected in a good and workmanlike manner); *Young v. McKelvey* (1985) 286 S.C. 119, 333 S.E.2d 566 (an employee expressly or impliedly promises he will perform work in a diligent and reasonably skillful manner); *Worster v. Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337 (a physician impliedly contracts he has reasonable and ordinary qualifications of his profession and will exercise reasonable skill, diligence, and care); *Fiddler v. Hobbs* (1985), Ind. App., 475 N.E.2d 1172 (an element of attorney negligence is failure to exercise ordinary skill and knowledge); *Crank v. Firestone Tire and Rubber Co.* (1985), Mo. App., 692 S.W.2d 397 (company claiming it is able to perform work impliedly warrants the work will be performed in a workmanlike manner); *Standard Roofing Co., Inc. v. Ragusa Brothers, Inc.* (1976), La.App., 338 So.2d 119 (implicit in every building contract is the implied promise work will be performed in a good and workmanlike manner); *Graulich v. Frederic H. Berlowe and Associates, Inc.* (1976), Fla.App., 338

So.2d 1109 (architect is liable for failure to follow professional standards concerning zoning); *see generally,* 17A C.J.S., *Contracts* § 329; 56 C.J.S., *Master and Servant* § 69; 17 Am.Jur.2d, *Contracts* § 371. We hold these principles apply with equal force to those who contract to develop computer programming.

■ The trial court found: (a) DPS represented it had the necessary expertise and training to design and develop a system to meet the needs of Smith; (b) DPS lacked the requisite skills and expertise to do the work; (c) DPS knew it lacked the skill and expertise; (d) DPS should have known Smith was dependent upon DPS's knowledge and abilities; and, (e) DPS should have foreseen Smith would incur losses if DPS did not perform as agreed. (Findings of Fact Nos. 6, 8, 9, 11, 12, 13), [R. 238]. These findings demonstrate DPS breached its implied promise of having the reasonable skill and ability to do the job for which it contracted.

### 3. *Notice of Breach*

DPS argues if the UCC applies it was error to allow recovery by Smith absent notice of breach under I.C. 26–1–2–607(3)(a). The trial court made no findings concerning notice. However, because we have determined the provisions of the UCC are not applicable to this transaction we need not address whether DPS was entitled to notice under I.C. 26–1–2–607(3)(a).

### 4. *DPS's Alleged 'Judicial Admissions'*

DPS asserts Smith waived its claim against DPS by judicial admission. We disagree.

In the Municipal Court action DPS moved for default judgment against Smith. Smith filed a document entitled "Opposition to Motion for Judgment by Default." DPS focuses attention on rhetorical paragraph one of that document. It says

1. The Defendant has agreed at all times from the filing of this action, that this case can be and ought to be settled to the Plaintiff's satisfaction without consuming this Court's or Counsel's time because it appeared that this entire matter arose out of a basic misunderstanding which could be readily resolved.

DPS characterizes the statement as an admission made in a pleading, which must be taken as true and which "waives" Smith's claim against DPS. This argument is without merit.

■ First, a party's response to a motion is not a pleading as defined by Ind. Rules of Procedure, Trial Rule 7(A).[5] Thus, the contents thereof cannot be considered as admissions in pleadings. *Sinn v. Faulkner* (1985), Ind.App., 486 N.E.2d 596, 597; *Smith v. City of South Bend* (1980), Ind. App., 399 N.E.2d 846, 850. *Cf., Elcona Homes Corp. v. McMillan Bloedell, Ltd.* (1985), Ind.App., 475 N.E.2d 713, 715 (answers to interrogatories, affidavit and exhibit were not pleadings); *Seastrom, Inc. v. Amick Construction Co., Inc.* (1974), Ind.App., 306 N.E.2d 125, 127 (a motion is not a pleading).

■ Further, while it is true facts expressly admitted by pleading need not be proven, *Aylesworth v. McKesson* (1981), Ind.App., 421 N.E.2d 422, 425, the statement here admits no fact. Its strains cre-

---

5. TRIAL RULE 7. PLEADINGS ALLOWED—FORM OF MOTION

   (A) Pleadings. The pleadings shall consist of:
     (1) a complaint and an answer;
     (2) a reply to a denominated counterclaim;
     (3) an answer to a cross-claim;
     (4) a third-party complaint, if a person not an original party is summoned under the provisions of Rule 14; and

     (5) a third-party answer.
   No other pleadings shall be allowed; but the court may, in its discretion, order a reply to an answer or third-party answer. Matters formerly required to be pleaded by a reply or other subsequent pleading may be proved even though they are not pleaded.

dulity to characterize this statement as an admission. At most the statement acknowledges a dispute which counsel believes should be settled without litigation. Also, the complete document reveals counsel was merely arguing negotiations were continuing in an attempt to settle the claim but had been delayed due to counsel's illness.

We find no error here.

5. *Excused performance by DPS Due to Smith's Refusal to Pay*

■ DPS argues the trial court's judgment is contrary to law because Smith's failure to pay invoices due excused further performance by DPS. DPS further asserts there was no breach of contract because any failure complained of arose from Smith's constant redefinition of its needs and requirements and a lack of training of its employees, not from any fault of DPS.

Smith argues *inter alia*, the trial court found there had been no prevention of performance by Smith. It avers there was substantial evidence in the record to support such a finding. However, no such finding appears here.

The trial court here found:

10. That Smith Oil for a period of time paid invoices to DPS as they became due but ultimately refused to pay the final billing in the amount set forth in these findings as $7,166.25.

This finding does not concern excused performance.

Generally, the common law of contracts excuses performance by one party only where the other party wrongfully prevents such performance. *E.g., Stephenson v. Frazier* (1980), Ind.App., 399 N.E.2d 794, 798. This argument is meritless.

6. *Admission of Evidence*

DPS contends the admission of evidence of system designs prepared by non-parties was error.

The admission or exclusion of evidence is within the discretion of the trial court.

*Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626, 629; *Whitaker v. St. Joseph's Hospital* (1981), Ind.App., 415 N.E.2d 737, 748. We review for abuse of discretion. *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682. Abuse of discretion or "clear error" results when an exercise of discretion is without reason or when the exercise is based upon impermissible reasons or considerations. *City of Elkhart v. Middleton* (1976), 265 Ind. 514, 518, 356 N.E.2d 207, 210.

DPS asserts error in the admission of two exhibits, plaintiff's exhibit 1 (R. 296) and plaintiff's exhibit 2 (R. 312). Plaintiff's exhibit 1 was a report dated June, 1978, prepared by Fowler, Suttles, & Co. The report analyzed the computer programming being used by Smith and made certain recommendations. Plaintiff's exhibit 2 was a preliminary system design prepared by George S. Olive & Co.

DPS objected to each admission. It asserted no proper foundation had been laid and the documents were not relevant. No cogent argument is made here concerning foundation requirements. That argument will not be considered further. See, Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). The trial court overruled DPS's objections concerning relevancy. The trial court stated the reports were relevant to its determination of whether there was a meeting of the minds about the terms of the later oral contract between DPS and Smith.

Relevancy is the logical tendency of evidence to prove a material fact. *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682. Evidence is relevant if it tends to prove a material fact or if it makes an inference more probable than it would be absent the evidence. *United Farm Bureau Mutual Ins. Co. v. Cook* (1984), Ind.App., 463 N.E.2d 522, 528. Evidence may be relevant although its ability to persuade is extremely light. *Pilkington v. Hendricks County R.E.M.C.* (1984), Ind.App., 460 N.E.2d 1000,

1010; *Rust v. Guinn* (1981), Ind.App., 429 N.E.2d 299, 305.

■ When plaintiff's exhibit 1 was admitted L.H. Smith was testifying concerning his perception of the Smith Company's needs. To the extent it was relevant to Smith's perception of his company's needs plaintiff's exhibit 1 was not irrelevant and it was not error to admit it.

■ Plaintiff's exhibit 2 was also admitted during Smith's testimony. He testified exhibit 2 was prepared by the George S. Olive Co. *and DPS* as a "preliminary system definition." Although DPS took the position at trial (and does so here) the report was solely the work of the George S. Olive Co., the testimony of Smith was otherwise. Thus, the exhibit was relevant to Smith's perception of his company's needs and, if the court chose to believe DPS assisted in its preparation, was also relevant to a determination of DPS's knowledge of those needs.

We find no abuse of discretion in the admission of plaintiff's exhibits 1 and 2.

### 7. *Proper Measure of Damages*

■ The trial court concluded the system delivered by Smith did not properly perform, was inoperable, and required extensive enhancement (finding of fact no. 11). It also concluded (a) DPS should have foreseen Smith would incur losses if the program did not perform (finding of fact no. 13), and, (b) nothing was proved in mitigation of damages (finding of fact no. 14). The trial court awarded Smith damages in the amount of $33,000 plus costs, and entered judgment accordingly.

DPS asserts the award of damages is contrary to law because the court applied an improper measure of damages. DPS argues the court did not apply the statutory measure of damages provided by IND. CODE 26–1–2–714(2). We have heretofore decided the merits of this case should be decided on principles of common law, not the sales provisions of the UCC. We will continue this analysis on the basis of common law principles.

The measure of damages for a breach of contract is the loss actually suffered by the breach, *Ethyl Corp. v. Forcum-Lannom Associates* (1982), Ind.App., 433 N.E.2d 1214, 1221; *Colonial Discount Corp. v. Berkhardt* (1982), Ind.App., 435 N.E.2d 65, 66, limited by what is reasonably foreseeable at the time the contract was actually entered into. *Tyler Refrigeration Corp. v. IML Freight, Inc.* (1981), Ind.App., 427 N.E.2d 718, 721. The plaintiff must show the damages flowed directly and naturally from the breach, but no particular degree of mathematical certainty is required in awarding damages. However, the amount awarded must be within the scope of the evidence. The computation of damages, if supported by the evidence in the record, is strictly a matter within the trial court's sound discretion. *Colonial Discount*, 435 N.E.2d at 67.

Without unduly burdening this opinion, we note there was substantial evidence of probative value the services of DPS did not result in the development of a program which performed as promised. See, e.g., testimony of Allen Faucett, the controller of Smith Co. (R. 548–647). Faucett's testimony revealed Smith paid $28,000 to DPS for services in the development of a system. (R. 613). Faucett also testified concerning additional employee time involved due to the failure of DPS's program to perform (R. 558, 565–566). He further testified to the hiring of at least one additional employee at a cost of $9,000. The employee was hired to perform tasks which would have been performed electronically had DPS's program performed as promised. (R. 562–563). These figures total $37,000. Thus, the $33,000 judgment rendered here is within the parameters of the evidence presented to the trial court.

We find no error in this regard.

### 8. *Denial of Recovery by DPS*

■ Lastly, DPS asserts the trial court erred by denying it recovery for the $7,166.25 it billed for services rendered between March 31, 1981, and June 30, 1981.

DPS claimed this amount as due when it filed its claim in Municipal Court. DPS bore the burden of proving that claim, and thus appeals from the trial court's negative judgment on this issue.

A negative judgment may be attacked only as being contrary to law. In making such a determination we will neither reweigh the evidence nor judge the credibility of witnesses. We consider only the evidence and reasonable inferences therefrom which are favorable to the prevailing party. *E.g., Matter of Estate of Parlock*, (1985), Ind.App., 486 N.E.2d 567, 568; *Indiana-Kentucky Electric Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, 143. We reverse only if the evidence leads to but one conclusion and the trial court reached a contrary one. *Parlock*, 486 N.E.2d at 569; *Weeks v. Kerr*, 486 N.E.2d 10, 11.

DPS argues the uncontradicted evidence proves its claim was an "account stated" to which Smith failed to timely object. DPS cites *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), 175 Ind.App. 416, 428, 372 N.E.2d 742, 750.

However, as Smith demonstrates, there was evidence the amount sought was disputed and Smith timely objected to it. (R. 425, 423–436, 683). Thus, the evidence does not lead to only one conclusion. We therefore may not reverse the trial court's judgment on this issue.

Affirmed.

YOUNG, P.J., and MILLER, J., concur.