Ed GOSSETT, Appellant
(Defendant Below),

v.

AUBURN NATIONAL BANK OF AUBURN, Francis M. Sanda, Appellees (Plaintiffs Below).

No. 49A04–8612–CV–00379.

Court of Appeals of Indiana, Fourth District.

Oct. 19, 1987.

Rehearing Denied Dec. 7, 1987.

James M. Secrest, James M. Secrest, P.C., Charles R. Sheeks, Cottrell, Ittenbach & Sheeks, Indianapolis, for Gossett.

J. Brian Niederhauser, Harrison & Moberly, Indianapolis, for Auburn Nat. Bank.

CONOVER, Judge.

Defendant–Appellant Ed Gossett (Gossett) appeals the trial court's judgment divesting him of the interest he acquired in certain real estate by way of a tax sale.

We reverse.

ISSUES

Because we reverse, we address only the following dispositive issues which we raise *sua sponte:*

1. whether Auburn National Bank (Auburn) lacks "standing" to argue Ind.Code § 6–1.1–24–4.2 violated First Federal Savings and Loan Association's (First Federal) Fourteenth Amendment due process right to receive notice "reasonably calculated to apprise" it of a pending tax sale of real estate upon which it held a mortgage, and

2. whether Auburn was entitled to notice of proposed issuance of the tax deed.

FACTS

O.S.I., Inc. (OSI) was an Indiana corporation. The subject real estate, commonly known as 6415 West Washington Street, Indianapolis, Marion County, Indiana (6415), was one of several properties OSI acquired in Indiana upon which Omelette Shop restaurants were located. OSI acquired title to 6415 by warranty deed dated September 1, 1977, recorded September 14, 1977, in the office of the Recorder of Marion County (recorder).

Ken Sexton (Sexton), a vice president of OSI, was hired in 1977 to oversee OSI's business interests in Indiana. His duties included paying the property taxes assessed on OSI's various parcels of Indiana real estate, including 6415. Sexton was terminated by OSI in December, 1981. Since then, two other persons have been responsible therefor. However, OSI never paid any of the real estate taxes assessed against 6415 from the time OSI acquired it in 1977 until it was sold to Gossett at the tax sale in 1982.

On February 20, 1978, OSI executed a mortgage on 6415 to secure a loan made to it by First Federal. This mortgage was recorded the following day, February 21, 1978, in the recorder's office. Francis Sanda (Sanda), an officer and shareholder of OSI, was guarantor of the loan secured by this mortgage.

Since 1979, the township assessors of Marion County have kept copies of the deeds filed for record and the real estate transfer books, rather than the Marion County Auditor (auditor).[1] These asses-

---

**1.** IC 6–1.1–5–9 provides
    For all civil townships in which a consolidated first class city [Indianapolis in this case] is situated, the township assessor has the duties and authority described in sections 1 through 8 of this chapter. These duties and authority include effecting the transfer of title to real property and preparing, maintaining, approving, correcting, indexing, and publishing the list or record of, or description of title to, real property. If a court renders a judgment for the partition or transfer of real property located in one (1) of these townships, the clerk of the court shall deliver the transcript to the township assessor.

and IC 6–1.1–5–4 provides
    Except as provided in section 9 of this chapter, the county auditor shall keep a transfer book, arranged by townships, cities, and towns. In the transfer book he shall enter a description, for the purpose of taxation, of land that is conveyed by deed or partition, the date of the conveyance, the names of the parties, and the postoffice address of the grantee. In addition, the auditor, except as provided in section 9 of this chapter, shall endorse on the deed or instrument of conveyance the words "duly entered for taxation", "not taxable", or "has already been listed for taxation".

sors first value the parcels for tax purposes, assign a parcel number to each piece of real estate, keep records of the property owners in their townships and the addresses to which the property owners request that tax notices be sent, and of any requests to change the mailing addresses for tax purposes. (R. 474–5). These parcel numbers, names, and mailing addresses are then put into the Marion County computerized property system. Only the township assessor may change the tax mailing address, the auditor is not empowered to do so. (R. 507).

The handwritten notation appearing on the deed conveying 6415 to OSI is

Tax statement:   c/o Robt T. Wildman
2450 1 Indiana Sq.

according to the Wayne Township assessor's records. (R. 473). 6415 is located in Wayne Township. Wildman was an Indianapolis attorney who represented OSI sporadically during its corporate existence.

Because OSI was delinquent in paying the taxes assessed on 6415, the auditor on June 25, 1982, mailed notices of proposed tax sale of the property by certified mail to:

OSI Inc.
c/o KEN SEXTON
SUITE G
920 N SHADELAND AVE
INDIANAPOLIS IN 46219

(R. 488). The notices were returned to the auditor's office undelivered and marked "not deliverable as addressed—unable to forward." No notice of the proposed 1982 tax sale was ever mailed to First Federal by the auditor. First Federal never filed a request with the auditor to be mailed a copy of any notice of a proposed tax sale of

6415 as authorized by IC 6–1.1–24–4.2,[2] the statute in force at that time.

At the sale, 6415 was sold to Gossett who paid $6,213.71 for it on August 10, 1982. That sum represented the total amount assessed against it for taxes and sewage service to the date of the sale. The auditor's office issued Gossett a certificate of sale.

In 1984, OSI was liquidated. It conveyed title to 6415 to Sanda by quitclaim deed as Sanda's share of the liquidation distribution. At the same time, Auburn loaned Sanda $200,000 which was secured by a mortgage on 6415. As a condition of that loan, all existing liens and encumbrances, including the First Federal mortgage, were to have been fully paid from the loan's proceeds so that Auburn's mortgage would be a first lien on the property. That deed and mortgage were recorded on June 29, 1984, in the recorder's office. However, Gossett's tax sale lien, superior to all other liens against 6415 under IC 6–1.1–24–9(b), was never paid by either Auburn or Sanda.

On the same day, June 29, 1984, the auditor's office mailed a Notice of Tax Sale Redemption or Issuance of Deed by certified mail to the same address it had sent the tax sale notices. This notice was also returned undelivered marked, "moved, not forwardable—forwarding order expired."

When a deed notice is returned, the auditor first checks to determine if the address to which the notice was mailed is the current one in the property system. If so, the phone book, the criss-cross, the computer system, and the property system are all checked to determine if that address is the current one. If no reason can be found to re-mail that notice, it is placed in the audi-

---

**2.** IC 6–1.1–24–4.2 at that time read

(a) In addition to the notice required by sections 3 and 4 of this chapter, the county auditor shall send a notice of sale to any mortgagee of real property which is subject to sale under the provisions of this chapter, if the mortgagee, annually, on a form prescribed by the state board of accounts, has:
(1) requested that notice of a sale of the real property be sent to him; and
(2) agreed to pay a fee to the county auditor, to cover the cost of sending notice.

The county council shall set the annual fee referred to in clause (2) of this section. However the fee may not exceed ten dollars ($10), for each separate parcel as carried on the tax records.
(b) The county auditor shall send the notice of sale to the mortgagee's last known address by certified mail. The county auditor shall prepare the notice in the form prescribed by the state board of accounts, and he shall mail the notice at least twenty-one (21) days before the date of sale.

tor's file, as was done in this case. (R. 515–16). Finally, prior to deeding a property sold at tax sale, the auditor prepares an information sheet bearing the titleholder's name and the parcel number involved and forwards a copy of that sheet to the recorder's office where the parcel is checked for lienholders and mortgagees of record. (R. 506, 508). As to 6415, that procedure was followed. Nothing was found in the recorder's office as to lienholders and mortgagees, and the auditor's records reveal no mortgage holders had filed a request asking to be notified if 6415 had delinquent taxes, was put up for tax sale, or went up for tax deed. (R. 511–12).

On August 15, 1984, the auditor's office executed and delivered a deed to 6415 to Gossett. This deed was recorded August 30, 1984, in the recorder's office. 6415 at that time was valued at $200,000.

Auburn thereafter commenced this litigation by filing a complaint to set aside the tax deed issued to Gossett and to have title to the subject real estate quieted in Sanda, its mortgagor. It named Sanda and Gossett as co-defendants. Both Sanda and Gossett then counterclaimed, each to quiet title in himself. The trial court, after a bench trial, divested Gossett of his interest in the subject real estate, and quieted title in Sanda.

Neither OSI, First Federal nor Auburn had actual notice of the tax sale proceeding or the pending issuance of the tax deed to Gossett.

Gossett appeals.

## DISCUSSION AND DECISION

### I. *Standard of Review*

The trial court entered findings of fact and conclusions of law pursuant to a request made under Ind. Rules of Procedure, Trial Rule 52(A). The reason for the entry of findings is to provide the parties and reviewing court with the theory upon which the trial judge decided the case so the right of review for error is effectively preserved. *Zalud v. Ethan Associates* (1981), Ind. App., 418 N.E.2d 309, 312.

Where findings are entered by the trial court, they must be sufficient to disclose a valid basis for the legal result reached in the judgment. *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72, 77. On appeal, we will not set aside the trial court's findings or judgment unless clearly erroneous. Trial Rule 52(A). A finding is clearly erroneous when the evidence contains no facts or reasonable inferences supporting the findings. *Wiseman v. Wolfe's Terre Haute Auto* (1984), Ind.App., 459 N.E.2d 736, 737, *reh. denied.* Where the evidence is conflicting, we will give deference to the trial court's decision. *Rome City, supra,* at 77.

However, the trial court cannot ignore competent, uncontroverted evidence. *Steenhoven v. College Life Ins. Co.* (1984), Ind.App., 458 N.E.2d 661, 666, fn. 13. We consider such evidence as true on appeal when it bears upon a material fact which is necessary to the decision but does not appear in the lower court's findings. The trial court should find all material or controlling facts within the issues of the case when there is credible evidence on the subject. *Indiana State Personnel Board v. Jackson* (1963), 244 Ind. 321, 192 N.E.2d 740, 744. A judgment is clearly erroneous when it leaves us with a firm and definite conviction a mistake has been made. *Rome City, supra,* at 77.

### II. *Auburn's "Standing" to Argue Due Process Tax Sale Notice Issue*

Auburn argues because it is entitled to full subrogation of First Federal's rights, including notice of a proposed tax sale, the tax sale of 6415 is void as to First Federal and Auburn because the auditor failed to notify First Federal thereof other than by notice by publication in violation of First Federal's Fourteenth Amendment right to due process of law.

This case is controlled by our Supreme Court's recent decision in *Calhoun v. Jennings, Auditor* (1987), Ind., 512 N.E.2d 178, a case substantially on all fours with the one we here consider but with one difference. In *Calhoun,* the appellant specifically raised the issue of whether the post tax sale mortgagee had standing to assert Fourteenth Amendment unconstitutionality of IC 6–1.1–24–4.2 because it vio-

lated the pre-tax sale mortgagee's right to due process. In the case before us, however, Gossett did not raise that issue either below or on appeal. Regardless, we must do so *sua sponte* because "standing" in such cases is a jurisdictional question. *Board of Commissioners v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92, 95–96.

■ Absent a case or controversy, courts are without jurisdiction to proceed. *Calhoun, id.,* 512 N.E.2d at 182; *City of Indianapolis v. Indiana State Board of Tax Commissioners* (1974), 261 Ind. 635, 308 N.E.2d 868, 869–70. Courts have no power to determine questions of law without proper complainants before them. "Standing" is a restraint upon a court's exercise of its jurisdiction, in that it cannot proceed where there is no demonstrable injury to the complainant before it. *Calhoun* and *City of Indianapolis, Id.* Auburn, the mortgagee who acquired its mortgage interest in 6415 after it had been sold at tax sale, has no "standing" to litigate the constitutionality of IC 6–1.1–24–4.2 vis-a-vis First Federal's Fourteenth Amendment due process right to notice by mail under *Mennonite Board of Missions v. Adams,* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, because Auburn, the post-tax sale mortgagee, cannot demonstrate any direct pecuniary loss caused by the operation of that allegedly unconstitutional statute. *Calhoun,* at 182. Because Auburn has no "standing" to argue that issue, we cannot consider it.

### III. *Tax Deed Notice*

■ Finally, Auburn had no right either to actual notice or notice by mail from the auditor of the proposed issuance of the tax deed. On this subject, our Supreme Court in *Calhoun* said

> We view the two year period of redemption following a tax sale as analogous to the self-executing feature of the Indiana Mineral Lapse Act involved in *Texaco [Inc. v. Short* (1982), 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738]. *Mennonite* requires that actual notice be given to reasonably ascertainable parties of inter-

est prior to the acquisition of a superior lien on the property by a tax sale purchaser. However, it would require an unwarranted expansion of *Mennonite* to conclude that the interested parties are entitled to notice of a lapse of the redemption. Following the expiration of the redemption period, the tax sale purchaser, upon tendering the tax sale certificate, is absolutely entitled to have a tax deed executed and delivered. Ind. Code § 6–1.1–25–4 ... We hold that the due process clause of the Fourteenth Amendment does not require that actual notice be given of either the lapse of the redemption period or the subsequent issuance of the tax deed.

Thus, Auburn was not entitled to such notice.

### IV. *Title Quieted in Gossett*

■ Sanda has filed no brief in this appeal in defense of his claimed title to the 6415 real estate. Under the facts before us, we must set aside the trial court's judgment quieting title in Sanda.

Gossett is the grantee named in the auditor's tax deed. It was delivered to him as holder of the tax certificate the auditor had issued him two years earlier under IC 6–1.1–24–9 as the highest bidder at 6415's tax sale. Sanda claims title under OSI's quitclaim deed to 6415 given him as his share of its assets upon OSI's liquidation.

The parties to this appeal have not demonstrated any irregularities in the tax sale proceedings which render them void, nor have we found any. The tax certificate was duly issued and the property was never redeemed by payment of Gossett's due under IC 6–1.1–25–2 during the two years Gossett held it. Gossett's tax deed was duly and timely issued thereafter. IC 6–1.1–25–4 provides in relevant part

> .     .     .     .     .

> (d) A tax deed executed under this section vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances....

Thus, Sanda's title was divested upon issuance of Gossett's tax deed. Accordingly, Gossett owns the fee simple absolute

title to 6415, free and clear of all liens and encumbrances, including Auburn's mortgage thereon. The trial court's judgment quieting title in Sanda was improvidently issued.

The judgment is reversed and remanded with instructions to vacate the judgment quieting title in Sanda and enter judgment quieting title in Gossett. Costs versus Auburn.

MILLER and SHIELDS, P.JJ., concur.